THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA ex rel.
SANDLIN GRAYSON,

    Plaintiff,

vs.

GENOA HEALTHCARE, a d.b.a of GENOA
HEALTHCARE HOLDINGS, LLC, a
Corporation; and GENOA HEALTHCARE
OF WASHINGTON, LLC, a Washington
corporation,

    Defendants.

No. C09-506Z

ORDER

THIS MATTER comes before the Court on defendants' motion to dismiss, docket no. 23. Plaintiff and relator Sandlin Grayson brings suit individually and on behalf of the United States. The United States has declined to intervene in this *qui tam* action. For the reasons set forth below, the defendants' motion is GRANTED in part, and DENIED in part.

ORDER - 1

**Background**

On October 13, 2008, relator Sandlin Grayson began working at Genoa Healthcare ("Genoa") as a corporate Billing Manager. Grayson Decl. at ¶ 2. Genoa owns and operates a chain of pharmacies located in community mental health centers ("CMHCs"). *Id.* at ¶ 3. Each pharmacy provides on-site pharmacy services to CMHC patients and also serves walk-in patients. *Id.* A majority of Genoa's patients are Medicare and Medicaid beneficiaries. *Id.* at ¶ 4. As a result, Genoa bills and receives payments from Medicare and Medicaid for providing medications to many of its patients. *Id.* Genoa pharmacies fill approximately 1,500-2,000 prescriptions for Medicare beneficiaries per month. *Id.*

In December, Mr. Grayson began to notice that the Genoa branch in Madison, Wisconsin was waiving copayments for some patients. Grayson Decl. Exh. E, at 1. He also learned that other Genoa staff members believed copayments were routinely being waived at three Genoa locations in Oregon. *See id.* at 2. Ms. Heather Wells, Billing Department Lead at Genoa Healthcare, told Mr. Grayson that previous employees had attempted to address the waiver of copayments at the Madison branch. However, Ms. Wells said that the waivers continued because Genoa managers decided that the relationship with the CMHC in Madison was "too big to lose." Complaint at ¶ 3.11.

Mr. Grayson informed his supervisor, Mr. Ryan Niemeyer, Genoa Controller, about the waiver of copayments. *Id.* at ¶ 3.12. Soon after, Mr. Grayson participated in

a conference call with Genoa managers and the pharmacist in charge of the Madison branch. *Id.* at ¶ 3.13. During the conference call, a Genoa manager stated "there had either been a written contract or a verbal agreement with the CMHC in Madison to waive copayments under $3.10." *Id.* After this conversation, Genoa CEO, Mr. Vic Breed, asked Mr. Grayson to investigate whether copayments were routinely being waived at other branches. *Id.* at ¶ 3.16.

On January 6, 2009, Mr. Grayson reported Genoa's Medicare copayment waivers to the Office of the Inspector General of the Department of Health and Human Services. *Id.* at ¶ 3.17. On January 11, 2009, Mr. Grayson emailed the Genoa Board of Directors informing them of his belief that the "Compliance Officer and Management of Genoa Healthcare has failed in detecting a large scale fraud and/or has participated in its development and concealment." Complaint, Exh. C.

Genoa terminated Mr. Grayson on April 2, 2009. Grayson Decl. at ¶ 2. Genoa told Mr. Grayson he was terminated because he exhibited "insufficient commitment to the company." *Id.* However, Mr. Grayson believes he was fired because he was attempting to bring the company into compliance with Medicare billing laws and regulations and that "management viewed [his] efforts as some kind of betrayal." *Id.*

In the complaint, Mr. Grayson alleges that Genoa had an agreement with CMHCs in Wisconsin and Oregon that copayments would be routinely waived. ¶¶ 3.6-3.12. He alleges these waivers were kickbacks to the CMHCs because in many cases the CMHCs were the parties responsible for paying for the copayment. *Id.* at

¶ 3.3. In addition, Mr. Grayson alleges that Genoa billed Medicare for at least some prescriptions that were never dispensed to patients at the Genoa pharmacy in Burien, Washington. *Id.* ¶ 3.27. Mr. Grayson also alleges that the Genoa pharmacy in Everett, Washington changed the dates of service on medications after they were dispensed to patients as a means of ensuring that the Medicare claims would be accepted. *Id.* at ¶ 3.31. Finally, Mr. Grayson alleges he was terminated because he opposed alleged illegal practices in violation of 31 U.S.C. § 3730(h). *Id.* at ¶ 6.1.

## Discussion

### A. Legal Standards

#### 1. Federal Rule of Civil Procedure 12(b)(6)

When ruling on a 12(b)(6) motion, the Court must construe the complaint "in the light most favorable to the plaintiff." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). The Supreme Court has explained that "when allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). In the complaint, the plaintiff must show a "plausible entitlement to relief," which requires more than a mere "formulaic recitation of the elements of a cause of action." *Id.* at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## 2. Federal Rule of Civil Procedure 9(b)

The requirements of Rule 9(b) apply to False Claims Act ("FCA") actions. *United States ex rel. Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To comply with Rule 9(b), allegations of fraud must state the who, what, when, where and how of the misconduct. *Vess v. Ciba-Geigly Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003). A plaintiff/relator is not required to identify representative false claims to support every allegation; rather, the Ninth Circuit has concluded that "it is sufficient to allege 'particular' details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Ebeid v. Lungwitz*, 616 F.3d 993, 998-999 (9th Cir. 2010).

### B. Plaintiff's Claims Under the False Claims Act

The FCA prohibits (1) the presentment of a false claim to the government, (2) the use of a false record or statement to get a false claim paid, and (3) conspiracies to get a false claim paid. *See* 31 U.S.C. § 3729(a)(1)-(3).

The complaint presents three theories by which Genoa submitted false claims to the government. The complaint alleges that Genoa submitted false claims to the government by (1) routinely waving copayments, (2) billing Medicare for some prescriptions that were never dispensed to patients, and (3) changing the dates of

service on medications after they were dispensed to patients so that Medicare claims would not be rejected.

### 1. The theory that Genoa submitted false claims because the Genoa pharmacy in Madison, Wisconsin and three pharmacies in Oregon waived routinely waived copayments.

The complaint alleges that a Genoa pharmacy in Madison, Wisconsin and three pharmacies in Oregon routinely waived copayments. Complaint at ¶¶ 3.6-3.9. In addition, the complaint alleges that Genoa pharmacies fill approximately 1,500-2,000 prescriptions for Medicare beneficiaries per month. *Id.* at ¶ 3.1. However, the complaint lacks any allegations that Genoa submitted claims to the government for which copayments were waived. Moreover, the complaint cites the outdated Department of Health and Human Services Special Fraud Alert for the proposition that the routine waiver of copayments results in false claims. *See id.* at ¶ 3.4. Without including reference to a current statute, regulation, or case authority stating that the waiver of copayments alone could result in a false claim, the complaint does not "state a claim for relief that is plausible on its face." *Ashcroft*, 129 S.Ct. at 1949. Therefore, the complaint fails to state a claim under 12(b)(6).

The complaint also fails to satisfy the requirements of Rule 9(b). Relators are not required to plead representative examples of false claims submitted to the government to support every allegation, but they must plead with sufficient particularity to lead to a strong inference that false claims were actually submitted. *Ebeid*, 616 F.3d at 998-999. The complaint does not allege that Genoa submitted

claims to the government for which copayments were waived; the complaint merely states generally that Genoa pharmacies "fill approximately 1,500-2,000 prescriptions for Medicare beneficiaries per month." *See* Complaint at ¶ 3.1. Thus, the complaint does not provide reliable indicia that leads to a strong inference that false claims were actually submitted. *See Ebeid*, 616 F.3d at 998-999. As a result, the complaint fails to satisfy Rule 9(b).

**2. The theory that Genoa submitted false claims because the Genoa pharmacy in Burien, Washington billed Medicare for some prescriptions that were never dispensed to patients.**

The complaint alleges that medications should not be billed to Medicare if the patient does not pick up the prescription. *Id.* at ¶ 3.26. Even if these allegations are taken as true, "[v]iolations of laws, rules or regulations alone do not create a cause of action" under the FCA. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). Rather, "some request for payment containing falsities made with scienter (i.e., with knowledge of the falsities and with intent to deceive) must exist." *Id.* at 1265. The complaint does not allege that Genoa knowingly submitted bills to Medicare for prescriptions that were not dispensed to patients. In addition, the complaint does not allege that Genoa intended to deceive Medicare by requesting payment for medications that were not dispensed to patients. Accordingly, the complaint fails to state a claim under 12(b)(6).

The complaint also fails to satisfy the requirements of Rule 9(b). The complaint alleges that the Genoa pharmacy in Burien, Washington, billed Medicare for

ORDER - 7

some prescriptions that were never dispensed to patients. Complaint at ¶ 3.27. To comply with Rule 9(b), allegations of fraud must state the who, what, when, where and how of the misconduct. *Vess*, 317 F.3d at 1106 (9th Cir. 2003). In <u>U.S. ex rel. v. Ctr. for Diagnostic Imaging</u>, 2011 WL 1304727, *8 (W.D. Wash 2011), the plaintiff's complaint alleged that the defendant's physicians "performed two x-rays on patients as an 'added service' to referring patients . . . for no charge" to induce referrals of governmental insured and privately insured patients. The defendant's brought a motion to dismiss for failure to allege fraud with sufficient particularity. *Id.* The court concluded that the plaintiff's failed to satisfy the pleading requirements of 9(b). *Id.* The court reasoned that the complaint failed to alleged the "who" (patient names) and the "when" (when the free services were allegedly offered and/or performed) required by Rule 9(b). *Id.* Similarly, in this case, the complaint fails to allege the who and when of the alleged fraud to bill Medicare for prescriptions that were not dispensed to patients. Neither the complaint, nor the attached Exhibit E (an email from Heather Wells to the plaintiff regarding the prescriptions at the Burien pharmacy that were not dispensed to patients), include information about the names of the patients that did not pick up their prescriptions or the dates that these prescriptions were actually billed to Medicare. Therefore, the complaint fails to satisfy Rule 9(b).

### 3. The theory that Genoa submitted false claims because the Genoa pharmacy in Everett, Washington changed the dates of service on medications after they were dispensed to patients so that Medicare claims would not be rejected.

The complaint alleges that the Genoa pharmacy in Everett, Washington changed the dates of service on medications billed to Medicare after they were dispensed to patients so that Medicare claims would not be rejected. Complaint at ¶ 3.31. The complaint also alleges that the dates of service affect whether or not Medicare will pay for the prescription drugs. *Id.* at ¶ 3.30. Here, the complaint alleges that the pharmacy in Everett knowingly changed the dates of service from the correct date to a date that was false with the intention of getting Medicare to pay for prescriptions it would not otherwise pay for. *Id.* at ¶ 3.31. As a result, the complaint alleges that claims were submitted to Medicare and that the claims contained "falsities made with scienter." <u>Hopper</u>, 91 F.3d at 1266. Therefore, the complaint states a claim under the FCA.

However, the complaint fails to satisfy the requirements of Rule 9(b). Relators are not required to plead representative examples of false claims submitted to the government to support every allegation, but they must plead with sufficient particularity to lead to a strong inference that false claims were actually submitted. *Ebeid*, 616 F.3d at 998-999. Although the complaint references Exhibit F (an email discussing a specific instance of a date of service being changed), this exhibit does not reference Medicaid or suggest that the medications referenced in the email were billed to Medicaid. *See* Complaint Exh. F. The facts alleged in the complaint do not lead to

a strong inference that claims for which the dates of service were changed were actually submitted to the government.  *See Ebeid*, 616 F.3d at 998-999.  Therefore, the complaint fails to satisfy Rule 9(b).

### 4. Conclusion

In sum, the first two theories presented in the complaint fail to state a claim under Rule 12(b)(6) and fail to meet the particularity requirements of Rule 9(b).  The third theory presented in the complaint states a claim under Rule 12(b)(6), but fails to meet the particularity requirements of Rule 9(b).  As a result, the Court GRANTS defendants' motion to dismiss plaintiff's FCA claims without prejudice and with leave to file an amended complaint.

### C. Plaintiff's Claim Under the Civil Monetary Penalties Law

Mr. Grayson lacks standing to bring a claim under the Civil Monetary Penalties Law ("CMPL").  The CMPL permits the Secretary of Health and Human Services to levy civil monetary penalties and assess treble damages against medical providers who file false or otherwise improper claims for payment in certain federal healthcare programs.  42 U.S.C. § 1320a-7a(a); *see also United States ex rel. Gonzalez v. Fresenius Medical Care*, 2010 WL 1645969, at *8.  In *Gonzalez*, a relator in a *qui tam* attempted to build a FCA suit based upon violations of the CMPL.  *Id.*  The court concluded that the relator lacked standing, reasoning that "[the] relator does not cite, and the Court has not found, any case in which a relator in a *qui tam* action has successfully built a FCA suit upon violations of the CMPL."  *Id.*  As a result, the Court

GRANTS Genoa's motion to dismiss the claim under the CMPL with prejudice because amendment would be futile.

### D. Plaintiff's FCA Retaliation Claim

If accepted as true, the complaint sets forth sufficient facts to constitute a plausible FCA retaliation claim. The FCA protects whistle blowers from retaliation by their employers. <u>Moore</u>, 275 F.3d at 845. Unlike a FCA claim, a FCA retaliation claim does not need to meet the requirements of Rule 9(b). <u>Mendiondo v. Centinela Hosp. Medical Center</u>, 521 F.3d 1097, 1103 (9th Cir. 2008). Under 31 U.S.C. § 3730(h) employers cannot discharge an employee "because of lawful acts done by the employee . . . in furtherance of an action under the FCA." An employee must prove three elements in a FCA retaliation claim: (1) that the employee engaged in activity protected under the statute; (2) that the employer knew that the employee engaged in protected activity; and (3) that the employer discriminated against the employee because she engaged in protected activity. <u>Moore</u>, 275 F.3d at 845.

In <u>Moore</u>, the court described the first element of a FCA retaliation claim as follows: An employee engages in protected activity "where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." <u>Id.</u> In this case, the complaint references Mr. Grayson's email to the Genoa Board of Directors in which he expressed the belief that the routine waiver of copayments constituted fraud. <u>See</u> Complaint ¶ 3.12. In addition, Mr. Grayson called

the Office of the Inspector General of the Department of Health and Human Services and reported his employer for waiving Medicare copayments. *Id.* at ¶ 3.17. Mr. Grayson alleges sufficient facts to support a good faith belief that Genoa's policies were fraudulent. Second, the complaint alleges that a previous billing manager, Brigit Sammon, similarly believed the waivers of copayments were fraudulent. *Id.* at ¶ 3.9. As a result, the complaint alleges sufficient facts that Mr. Grayson was engaged in a protected activity under the FCA as required by *Moore*. *See id.* 275 F.3d at 845.

Considering the second element, the complaint alleges sufficient facts that Genoa knew Mr. Grayson was engaged in protected activity under the FCA. *See id.* In *Mendiondo*, an employee brought a FCA retaliation claim alleging in her complaint that she complained to her employer that the company was possibly committing "civil and criminal violations." 521 F.3d at 1104. The court in *Mendiondo* said, "although vague, the reference to civil violations can be construed to include the suspected Medicare fraud" and that her employer was "informed of her protected activity." *Id.* In this case, Mr. Grayson gave his employer more notice of his protected activity than the plaintiff in *Mendiondo*. *See id.* In his email to the Genoa Board of Directors, Mr. Grayson clearly states his belief that "Genoa has implemented a plan to defraud the Centers of Medicare/Medicaid and a variety of state Medicaid agencies." Complaint, Exh. C. As a result, the complaint adequately alleges that Genoa was informed that Mr. Grayson was engaged in a protected activity.

Finally, considering the third element, the complaint alleges that Genoa retaliated against Mr. Grayson because he engaged in a protected activity.  *See* *Moore*, 275 F.3d at 878-848.  The court in *Mendiondo* said that it suffices at the pleading stage for the plaintiff to simply give notice that he believes that he was terminated because of his investigation into the practices specified in the complaint.  521 F.3d at 1104.  In this case, the complaint states that "Sandlin Grayson's employment was terminated because he opposed illegal practices referenced herein."  Complaint at ¶ 6.1.  As a result, the complaint adequately alleges that Genoa retaliated against him because he engaged in a protected activity.

The Court DENIES Genoa's motion to dismiss Mr. Grayson's FCA retaliation claim.

**E.  Plaintiff's Wrongful Discharge Claim**

Mr. Grayson's common law wrongful discharge claim is entirely duplicative of his FCA retaliation claim.  In *United States ex rel. Zemplenyi v. Group Health Coop.*, 2010 WL 3584444, *3, (W.D. Wash. Sept. 10, 2010) the court said that "[t]he prevailing policy of Washington courts has been to deny common law wrongful discharge claims when they are entirely duplicative of existing statutory remedies."  As a result, the Court GRANTS Genoa's motion to dismiss Mr. Grayson's common law wrongful discharge claim.  The Court DISMISSES this claim with prejudice.

**Conclusion**

For the reasons discussed above, the Court:

(1) GRANTS defendants' motion to dismiss plaintiff's claims under the False Claims Act, 31 U.S.C. § 3729(a)(1)-(3), without prejudice and with leave to file an amended complaint. Plaintiff must file any amended complaint under the False Claims Act by August 19, 2011.

(2) GRANTS defendants' motion to dismiss plaintiff's claim under the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a(a)(5), and plaintiff's common law wrongful discharge claim with prejudice.

(3) DENIES defendants' motion to dismiss plaintiff's FCA retaliation claim.

IT IS SO ORDERED.

DATED this 6th day of July, 2011.

Thomas S. Zilly
United States District Judge